UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MERCIS B.V., | |
| Plaintiff, | No. 25 C 378 |
| v. | Judge Thomas M. Durkin |
| THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IN SCHEDULE A, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Mercis B.V. brought this suit in connection with alleged infringement of the Miffy trademarks and copyright by online retailers. The Court granted Plaintiff's *ex parte* motion for a temporary restraining order. Plaintiff then filed a motion for a preliminary injunction. R. 43. Alibaba.com Singapore E-Commerce Private Limited ("Alibaba") asks the Court to dismiss the case, dissolve the TRO and deny the motion for a preliminary injunction, or limit the asset restraint to each Defendant to the revenue from the sales of allegedly infringing listings. R. 60. For the following reasons, Alibaba's motion is denied and the motion for a preliminary injunction is granted in part and denied in part.

### Background

The Miffy character, a cartoon rabbit, was created by Dutch artist Dick Bruna in 1955. R. 13 ¶ 7. Since that time, Miffy has been featured in children's books, television series, a movie, and merchandise worldwide. *Id.* Plaintiff, a Dutch

company, is the registered owner of the Miffy trademarks, Reg. Nos. 2,210,029; 2,482,597; 4,248,049; 5,516,174; 5,652,014; 5,663,554; 5,663,610; 5,706,279; 5,706,346; 5,706,199 and 6,727,656, and the Miffy copyright, Reg. No. VA0001054563. *Id.*

On January 14, 2025, Plaintiff filed this suit alleging that 242 defendants who sell products on the Alibaba e-commerce platform infringed on the Miffy trademarks and copyright. Plaintiff thereafter amended the complaint to sue only the 147 defendants from whom Plaintiff's investigator had purchased products. On March 12, 2025, the Court granted Plaintiff's *ex parte* motion for a temporary restraining order ("TRO"). R. 36. The TRO temporarily enjoined Defendants and "all persons acting for, with, by, through, under, or in active concert with them" from a number of actions, including using the Miffy trademarks and copyright in connection with the distribution, marketing, advertising, offering for sale, or sale of any unauthorized product. R. 37 ¶ 1. It also prohibited Defendants from "transfer[ing] or dispos[ing] of any money or other of Defendants' assets in any of Defendants' financial accounts." *Id.* ¶ 2. Relevant here, the TRO required Alibaba to:

1. Upon Plaintiff's request, provide expedited discovery sufficient to determine the identities and locations of Defendants, the nature of their operations and sales, and the existence of any financial accounts. *Id.* ¶ 5.

2. Upon Plaintiff's request, disable and cease displaying any advertisements used by or associated with the sale of goods using the Miffy trademarks and copyright. *Id.* ¶ 6.

3. Locate and freeze all accounts connected to Defendants such that Defendants cannot transfer or dispose of any money until further order of the Court. *Id.* ¶ 7.

The Court granted a 14-day extension of the TRO on March 24, 2025. R. 40. Several days before the TRO was set to expire, Plaintiff filed a motion for a preliminary injunction. R. 43. Counsel for Alibaba appeared on April 7, 2024 and at the hearing on the motion for a preliminary injunction the next day, along with counsel for several Defendants. R. 48. The parties agreed that the Court should extend the TRO until June 6, 2025.

## Discussion

### I. Alibaba's Motion

Alibaba asks the Court to modify the TRO and deny the motion for a preliminary injunction because it cannot be bound by such injunctions as a nonparty. Under Rule 65(d)(2) an injunction only binds: "(A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)." Fed. R. Civ. P. 65(d)(2). "[A] person is in active concert or participation with an enjoined party, and thus bound by the injunction, if he aids or abets an enjoined party in violating the injunction, or if he is in privity with an enjoined party." *Blockowicz v. Williams*, 630 F.3d 563, 567 (7th Cir. 2010).

Alibaba argues that it does not fit into any of these narrow categories. Plaintiff argues only that Alibaba aids and abets Defendants in their alleged infringement.

3

Contrary to Plaintiff's suggestion, the relevant inquiry under Rule 65(d)(2)(C) is whether Alibaba is aiding or abetting Defendants *in violating the injunction*. The focus then is on Alibaba's conduct after the TRO was entered. *See id.* at 568 ("Actions that aid and abet in violating the injunction must occur after the injunction is imposed for the purposes of Rule 65(d)(2)(C), and certainly after the wrongdoing that led to the injunction occurred."). Alibaba representative Liyi Lei attests that since the receiving notice of the TRO, Alibaba removed all at-issue listings, removed other Plaintiff-related listings, and froze all the assets in each of Defendants' accounts. R. 60-1 ¶¶ 27, 32. In other words, Alibaba has been complying with the TRO, not aiding and abetting Defendants in violating it.[1]

But it is not clear what modification of the TRO Alibaba seeks on that basis. Alibaba has already removed the at-issue listings. Perhaps Alibaba wants the Court to remove the language requiring that Alibaba freeze Defendants' accounts. But such a modification would not *authorize* Alibaba to unfreeze Defendants' accounts. To the contrary, if, in the absence of an express instruction, Alibaba chose to stop freezing

---

[1] Plaintiff's other two arguments in response are unavailing. Plaintiff says that Alibaba has waived any objection by participating in other cases before this Court without objection. Alibaba timely raised an objection after receiving notice of the TRO, and its conduct in other cases is irrelevant to whether the Rule 65(d)(2) criteria are satisfied in this case. Plaintiff also says that the Court has personal jurisdiction over Alibaba because of Defendants' advertisements and sales in Illinois. But that is irrelevant to whether Alibaba can be bound to an injunction under Rule 65(d)(2). *Cf. TV Tokyo Corp. v. Individuals, Corps., Ltd. Liab. Companies, Partnerships & Unincorporated Associations Identified on Schedule A Hereto*, No. 25 C 246, 2025 WL 860188, at *2 (N.D. Ill. Mar. 19, 2025) (distinguishing the issue of whether the court had personal jurisdiction over Shopify from the issue of whether the platform could be bound by the injunction under Rule 65(d)(2)).

Defendants' accounts—even though the TRO continued to restrain Defendants from transferring or removing such assets—Alibaba would undoubtedly be back before this Court on a motion to compel explaining how such conduct does not amount to aiding or abetting Defendants in violating the TRO. In other words, Alibaba says it is not "bound by" the TRO because it complied, so it did not aid or abet Defendants in violating it. But if Alibaba did not comply, it may very well be bound by the TRO as an aider and abettor.

In any case, Rule 65(d)(2) is not a basis for denying a motion for a preliminary injunction, and for the reasons stated in the section that follows, the Court is granting in part and denying in part that motion. Thus, the TRO will no longer apply, and the asset restraint will be lifted. So, there is nothing to be done in connection with Alibaba's Rule 65(d)(2) argument.

Alibaba's motion is denied for that reason alone. To be sure, Alibaba makes other arguments about the merits of the TRO and preliminary injunction and the scope of the restraint on Defendants' assets. Alibaba contends that Plaintiff has not adequately shown a likelihood of success on the merits or irreparable harm. Alibaba also asserts that the asset freeze, which extends to all monies in Defendants' accounts, is overbroad because only 0.017% of all Defendants' total revenue in the last year is attributable to the at-issue listings. R. 60-1 ¶ 31.

These are not Alibaba's arguments to make. Alibaba is not a party to this action. Indeed, that is the whole premise of Alibaba's Rule 65(d)(2) argument. As a nonparty, Alibaba can challenge whether it is properly bound by an injunction order

under Rule 65(d). *Cf. H-D Mich., LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 842 (7th Cir. 2012) ("Should any non-party believe that it has been enjoined improperly, it is free to seek a modification or clarification from the district court[.]"). But Alibaba does not have standing to make arguments about the underlying basis for an injunction. *See Kawada Co. v. The Individuals, Corps., Ltd. Liab. P'ships, and Unincorporated Ass'ns Identified on Schedule A Hereto*, No. 19 C 6838, Doc. 70 at 22:1–11 (N.D. Ill. Dec. 18, 2019) ("Wish lacks standing to interject itself into the merits of plaintiff's Lanham Act claims against the defendants."). Nor does Alibaba have standing to argue that too much of Defendants' money is being restrained.

Defendants have had every opportunity to challenge the merits of enjoining them or the scope of the asset freeze. No Defendant has disputed Plaintiff's showing of a likelihood of success on the merits or irreparable harm, and only one has sought a modification of the asset restraint. *See* R. 52. Nonparty Alibaba cannot stand in Defendants' shoes and make arguments Defendants themselves have apparently decided not to make. *See KTM AG v. The Individuals, Corps., Ltd. Liab. P'ships, and Unincorporated Ass'ns Identified on Schedule A Hereto*, No. 21 C 1380, Doc. 74 at 3 (N.D. Ill. Sept. 29, 2022) ("[T]he proper solution is not for marketplace providers or payment processors to come into court to defend the interests of the defendants. The solution is that if the defendants disagree with either the scope of the injunction or the merits of the claims, defendants themselves come in and defend.").

Alibaba claims some direct harm from the asset restraint. Specifically, Alibaba says that it suffers harm "when sellers who engage in entirely or predominately

6

legitimate sales activity are subject to disproportionate asset freezes" because those sellers "often leave the platform," thus depriving Alibaba of "future revenue and profit generated by those sellers' membership and usage of Alibaba." *Id.* ¶ 34. Alibaba also claims to suffer "reputational harm" because non-infringing sellers will tell others about Alibaba freezing accounts "without adequate justification" causing others to be "reluctant" to sell on Alibaba's platform. *Id.* ¶ 35. While harm to nonparties like Alibaba is part of this Court's balance of the equities, the harm Alibaba asserts is vague and speculative. Alibaba offers no statistics on or examples of non-infringing sellers being reluctant to join or leaving the platform because of Alibaba's compliance with court-ordered asset restraints. Alibaba also does not provide any detail on its business model or how its revenue is connected with the revenue of the sellers on its platform.

Of even greater concern to the Court is Alibaba's assertion that it is freezing assets "without adequate justification." A court order is more than "adequate justification." That Alibaba has a different perspective on whether the listings at issue infringe on the Miffy trademarks and copyright—a perspective that may very well be informed by its cited financial interest in the sale of goods on its platform—is beside the point. That is a determination made by this Court as part of assessing Plaintiff's likelihood of success on the merits. Similarly, Alibaba spills much ink describing the measures it takes to police infringing activity on its platform. If Alibaba is suggesting that this Court stand aside while Alibaba adjudicates

infringement claims against the sellers on its platform through its system, that suggestion is not well taken.[2]

Nonetheless, it bears noting that Plaintiff's responses to Alibaba's arguments regarding the asset restraint are perplexing. Plaintiff first states that an asset freeze is necessary because Defendants' sales "remain disputed" because "no discovery has taken place." R. 79 at 18. The TRO required third parties to provide Plaintiff with expedited discovery about Defendants' sales and financial accounts, including "Defendants' sales and listing history." R. 37 ¶ 5(b). The TRO also authorized Plaintiff to issue expedited discovery to Defendants on the same topic. R. 37 ¶ 3(b). More than

---

[2] Alibaba also urges the Court to dismiss this case outright because Plaintiff did not tell the Court that another district court judge recently granted a motion to dismiss in a case alleging infringement of the same trademarks and copyright. *See Mercis, B.V. v. Individuals, Corps., Ltd. Liab. Companies, Partnerships, & Unincorporated Associations Identified on Schedule A Hereto*, No. 24 C 5853, 2025 WL 540509, at *1 (N.D. Ill. Feb. 19, 2025). Alibaba points to the Local Rule providing that a lawyer "shall not . . . fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel." N.D. Ill. L.R. 83.50 (incorporating by reference ABA Model Rule 3.3).

Plaintiff should have cited the case and if necessary, distinguished it. What's more, Plaintiff's counsel offers no response to this argument in its brief. Failing to address this argument only serves to highlight Plaintiff's counsel's lack of candor. Such a blatant omission would reflect poorly on the credibility of any law firm, but it is even more disappointing for a firm that appears so frequently before this Court. However, this type of non-disclosure does not warrant dismissal. The sole case Alibaba cites in support of dismissal is *Xped LLC v. Entities Listed on Exhibit 1*, 690 F. Supp. 3d 831, 856 (N.D. Ill. 2023), wherein the court sanctioned plaintiff's counsel who knowingly made "false representations" about plaintiff and defendant's locations and raised "frivolous legal arguments" that half the defendants, who never actually used the mark at issue, infringed on the plaintiff's trademark. Failing to cite a non-binding district court case, even if it involved the same trademarks and copyright, is a far cry from such egregious misconduct.

two months have passed since the TRO was issued. Plaintiff provides no explanation for why it has not issued discovery requests during that time. The Court granted expedited discovery for a reason, to ensure that the asset restraint is "limited only to what is reasonably necessary to secure the (future) equitable relief." *Deckers Outdoor Corp. v. Partnerships & Unincorporated Associations Identified on Schedule A*, No. 13 C 07621, 2013 WL 12314399, at *2 (N.D. Ill. Oct. 31, 2013). Plaintiff also argues that an asset restraint is necessary to protect its right to "realize statutory damages." R. 79 at 18. For the reasons that follow, that argument lacks merit.

## II. Motion for a Preliminary Injunction

With the resolution of Alibaba's motion, the Court considers Plaintiff's motion for a preliminary injunction on the merits.[3] "To obtain a preliminary injunction, a plaintiff must show that it is likely to succeed on the merits, and that traditional legal remedies would be inadequate, such that it would suffer irreparable harm without the injunction." *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 539 (7th Cir. 2021) (citation omitted). If the plaintiff makes this showing, then the court must balance the equities, weighing the harm to the moving party if the requested injunction is denied against the harm to the nonmoving party and the public—including third parties—if it is granted." *Finch v. Treto*, 82 F.4th 572, 578 (7th Cir. 2023).

As an initial matter, Defendant Shenzhen Xin Hong Yang Packaging Products Co., Ltd. ("Defendant No. 163") opposes the motion for a preliminary injunction for

---

[3] The Court denied the motion without prejudice pending briefing on Alibaba's motion. R. 54. The Court therefore considers Plaintiff's motion to be renewed with the resolution of Alibaba's motion.

lack of personal jurisdiction. *See* R. 52. The Court also requested supplemental briefing regarding Plaintiff's likelihood of success on the merits of the claims against Defendant Shenzhen Renzhexi Technology Co., Ltd. ("Defendant No. 159"), which is not yet complete. Therefore, the Court addresses the merits of a preliminary injunction as to all Defendants except for Defendants No. 159 and 163.

With respect to the other Defendants, Plaintiff provided a chart comparing the at-issue listings with the Miffy trademarks and copyright. *See* R 79-4. Upon review of that chart, the other evidence in the record, and Plaintiff's arguments—including those in support of its motion for a TRO, which are incorporated by reference into the present motion—the Court finds that Plaintiff has made an adequate showing that it is likely to succeed on the merits of the trademark and copyright infringement claims, that it is likely to suffer irreparable harm without a preliminary injunction, and that the harm of denying the injunction exceeds the harm to Defendants, nonparties, and the public of granting one. No individual Defendants raise arguments to the contrary. And for the reasons previously stated, nonparty Alibaba does not have standing to raise such arguments on Defendants' behalf.

However, the Court denies Plaintiff's request to continue restraining the funds in all Defendants' seller accounts, including Defendants No. 159 and 163. District courts "generally do *not* have the authority to preliminarily restrain assets where a plaintiff seeks a money judgment." *Deckers*, 2013 WL 12314399, at *2 (citing *Grupo Mexicano de Desarrollo v. Alliance Bond Fund*, 527 U.S. 308, 331 (1999)) (emphasis in original). The one exception to that rule is where a plaintiff seeks an

10

equitable remedy like an accounting and disgorgement of profits. *Id.*; *cf. Steadfast Ins. Co. Inc. v. Auto Mktg. Network, Inc.*, 191 F.3d 457 (7th Cir. 1999) ("[F]ederal district courts do not have the power to grant preliminary injunctions in an action for money damages to prevent a defendant from transferring assets in which no lien or equitable interest is claimed.").

Plaintiff initially sought equitable remedies in this case. R. 13 ¶ 42; *id.* at p. 16. Plaintiff relied on that request in seeking the asset freeze as part of the TRO. R. 19 at 5 ("A prejudgment asset freeze is also proper since Plaintiff seeks an equitable remedy in the account of Defendants' profits pursuant to 15 U.S.C. § 1117(a)."). But the only basis Plaintiff now asserts for maintaining the asset restraint is the need to secure statutory damages. R. 44 at 4; *see also* R. 79 at 18. That is beyond the Court's authority, so the asset restraint is hereby lifted as to all Defendants.

## Conclusion

For the foregoing reasons, the Court denies Alibaba's motion and grants in part and denies in part Plaintiff's motion for a preliminary injunction. The asset restraint is hereby lifted as to all Defendants, and the motion for a preliminary injunction is otherwise granted as to all Defendants except for Defendant Nos. 159 and 163. Plaintiff is to submit a revised proposed preliminary injunction consistent with this opinion to the Court's proposed order inbox by May 21, 2025.

11

ENTERED:

Honorable Thomas M. Durkin
United States District Judge

Dated: May 19, 2025